Joseph D. Cohen (SBN 155601)
Kara M. Wolke (SBN 241521)
Leanne H. Solish (SBN 280297)
Melissa C. Wright (SBN 291120)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email: info@glancylaw.com

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE K12 INC. SECURITIES LITIGATION | Master File No. 4:16-cv-04069-PJH |
| | <u>**CLASS ACTION**</u> |
| | **LEAD COUNSEL'S: (1) NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; AND (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Hearing Date:   July 10, 2019 |
| | Time:              9:00 a.m. |
| | Location:        Courtroom 3 - 3rd Floor |
| | Judge:            Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ............................................................................ 2

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ........................... 3

III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST ................... 3

        A.    Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The
              Common Fund ............................................................................................ 3

        B.    The Court Should Calculate The Requested Fee As A Percentage Of The
              Common Fund ............................................................................................ 4

        C.    The Requested Fee's Approval Is Supported By The Factors Considered By
              Courts In The Ninth Circuit ....................................................................... 5

              1.    The Quality Of The Results Achieved Supports The Fee Request ............ 5

              2.    The Substantial Risks Of The Litigation Support The Fee Request .......... 7

              3.    The Skill Required And The Quality Of The Work ................................. 10

              4.    The Contingent Nature Of The Fee And The Financial Burden
                    Carried By Counsel Support The Fee Request ........................................ 12

              5.    A 33% Fee Award Is Consistent With Fee Awards In Similar,
                    Complex, Contingent Litigation .............................................................. 14

              6.    The Reaction Of The Settlement Class Supports The Requested Fee ...... 16

        D.    A Lodestar Cross-Check Supports The Requested Fee ......................... 17

IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
        APPROVED .................................................................................................. 19

V.      LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS
        AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4) .......................................... 21

VI.     CONCLUSION ............................................................................................... 22

1

## **TABLE OF AUTHORITIES**

2

3

<u>CASES</u>

4

*Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
　2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) .......................................................... 11

5

6

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
　572 F.3d 221 (5th Cir. 2009) ........................................................................................ 6

7

8

*Antonopulos v. N. Am. Thoroughbreds. Inc.*,
　No. 87-0979 G (CM), 1991 WL 427893, (S.D. Cal. May 6, 1991) ............................ 16

9

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
　472 U.S. 299 (1985) .................................................................................................... 12

10

11

*Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
　909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................................ 10

12

13

*Boeing Co. v. Van Gemert*,
　444 U.S. 472 (1980) ...................................................................................................... 3

14

*Buccellato v. AT & T Operations, Inc.*,
　2011 WL 3348055 (N.D. Cal. June 30, 2011) ............................................................ 18

15

16

*Cabiness v. Educ. Fin. Sols., LLC*,
　2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) ........................................................... 18

17

18

*Chun–Hoon v. McKee Foods Corp.*,
　716 F. Supp. 2d 848 (N.D. Cal. 2010) ....................................................................... 18

19

*Craft v. Cty, of San Bernardino*,
　624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................................ 14, 15

20

21

*Destefano v. Zynga, Inc.*,
　2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................................... 10, 12, 17

22

23

*Dura Pharm., Inc. v. Broudo*,
　544 U.S. 336 (2005) ...................................................................................................... 9

24

*Ellison v. Steven Madden, Ltd.*,
　2013 WL 12124432 (C.D. Cal. May 7, 2013) .............................................................. 4

25

26

*Fernandez v. Victoria Secret Stores, LLC*,
　No. CV 06-04149 (MMM) (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008) .............. 16, 17

27

28

*Franco v. Ruiz Food Prods., Inc.*,
  2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ........................................................... 21

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ................................................................................... 13

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) ................................................................................. 17

*Gudimetla v. Ambow Educ. Holding*,
  2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) ......................................................... 7

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ....................................................................................... 20

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................................... 5

*Hicks v. Morgan Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................... 21

*Hopkins v. Stryker Sales Corp.*,
  2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............................................................... 18

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................... 5, 14

*In re Affymetrix Derivative Litigation*,
  2008 WL 5050147 (N.D. Cal. 2008) ........................................................................... 6

*In re Alstom SA Sec. Litig.*,
  741 F. Supp. 2d 469 (S.D.N.Y. 2010) ..................................................................... 13

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ......................................................... 21, 22

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ......................................................... 17

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................................. 14

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................................................... 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................... 4, 18

*In re Cendant Corp. Litig*,
264 F.3d 201 (3d Cir. 2001) ................................................................................. 10

*In re Charles Schwab Corp. Sec. Litig.*,
2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ..................................................... 5, 7

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) ...................................................................... 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......................................................... 18

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005)................................................... 11, 16

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) .............................................................................. 7

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................... 9, 20, 22

*In re Initial Pub. Offering Sec. Litig.*,
2011 WL 2732563 (S.D.N.Y. July 8, 2011) .......................................................... 18

*In re LJ Int'l, Inc. Sec. Litig.*,
2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ....................................................... 7

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ...................................................................... 19

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000).................................................................................. 15

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal 2008) ........................................................... *passim*

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 16, 2009) ....................................................... 13

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)........................................................................... 7, 10, 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...................................................... 19

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985)......................................................................... 17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ......................................................................... 4, 12, 14

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) .............................................................. 13

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..................................................... 7

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
    564 U.S. 135 (2011) ......................................................................................... 14

*Knight v. Red Door Salons, Inc.*,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...................................................... 16

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010) ......................................................................................... 13

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ......................................................................... 14, 17

*Razilov v. Nationwide Mut. Ins. Co.*,
    2006 WL 3312024 (D. Or. Nov. 13, 2006) ...................................................... 22

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ....................................................................... 14

*Rodman v. Safeway*,
    2018 WL 4030558 (N.D. Cal. Aug. 22, 2018) ................................................. 5

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ........................................................................... 5

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................... 5

*Romero v. Producers Dairy Foods, Inc.*,
    2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ................................................. 15

*Singer v. Becton Dickinson & Co.*,
    No. CV 08-0821 IEG (BLMx), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ........... 16

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ......................................................................... 4

*Tarapara v. K12 Inc.*,
    Case No. 16-cv-4069-PJH, 2017 WL 3727112 (N.D. Cal. Aug. 30, 2017) ................ 8

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................................. 12

*Todd v. STAAR Surgical Co.*,
  2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ............................................................... 22

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...................................................................................... 14

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ...................................................................................... 3

*Vinh Nguyen v. Radient Pharm. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................................... 4

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2012) ........................................................................... 5, 7, 17

<u>STATUTES</u>

15 U.S.C. §78u-4(a)(4)21 ...................................................................................... i, 21

28 U.S.C. 1658(b)(1)(2) ............................................................................................. 7

<u>OTHER AUTHORITIES</u>

*Common Funds and Common Problems: Fee Objections and Class Counsel's Response*,
  17 Rev. Litig. 525 (1998) ....................................................................................... 15

**NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order," ECF No. 109), on July 10, 2019, at 9:00 a.m., or as soon thereafter as counsel may be heard, at the United States Courthouse, Courtroom 3 – 3rd Floor, 1301 Clay Street, Oakland, CA 94612, before the Honorable Phyllis J. Hamilton, Chief District Judge, Lead Counsel Glancy Prongay & Murray LLP ("Lead Counsel" or "GPM"), will and hereby does move the Court for an Order awarding attorneys' fees and reimbursement of Litigation Expenses in the above-captioned securities class action (the "Action").[1]

This Motion is based on the following Memorandum of Points and Authorities, the Solish Declaration, the Stipulation, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.

### STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award in the amount of 33% of the Settlement Fund (*i.e.*, the Settlement Amount, plus interest earned thereon).

2. Whether the Court should approve the request for reimbursement of $166,978.92 in litigation expenses incurred by Lead Counsel in this Action.

3. Whether the Court should approve the request for reimbursement of $5,500 to Lead Plaintiff Babulal Tarapara ("Lead Plaintiff") for his costs, including lost wages, directly related to his representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated November 26, 2018 (ECF No. 106-1) (the "Stipulation") or the concurrently filed Declaration of Leanne H. Solish in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Solish Declaration" or "Solish Decl."). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Solish Declaration.

## MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Lead Counsel respectfully request that the Court grant its motion for an award of attorneys' fees in the amount of 33% of the Settlement Fund, or $1,155,000, plus interest earned at the same rate as the Settlement Fund.  Lead Counsel also seeks reimbursement of: (i) $166,978.92 in litigation expenses that Lead Counsel reasonably and necessarily incurred in prosecuting and resolving the Action; and (ii) $5,500 in costs incurred by the Court-appointed Lead Plaintiff Babulal Tarapara ("Lead Plaintiff"), directly related to his representation of the Settlement Class, as authorized by the PSLRA.

## I.       PRELIMINARY STATEMENT

The proposed Settlement, which provides for a payment of $3.5 million in cash in exchange for the resolution of the Action, represents a very favorable result for the Settlement Class, particularly when juxtaposed against the significant hurdles that Lead Plaintiff would have had to overcome in order to prevail in this complex securities fraud litigation.  In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation and damages.  The risk of losing was very real, and it was greatly enhanced by the fact that Lead Counsel would be litigating against a corporate defendant represented by highly skilled defense counsel, under the heightened pleading standard of the PSLRA.  Moreover, Defendants vehemently opposed Lead Plaintiff's proposed class period—the same as the Settlement Class Period—arguing that this proposed class period began too early and ended too late.  ¶¶ 5, 54.  If the Court agreed with Defendants' arguments and certified a class pursuant to Defendants' proposed class period, November 7, 2013 through June 26, 2014, the vast majority of the Settlement Class Period (and damages) would have been precluded from the case.  Similarly, even if the Court were to accept Defendants' arguments only in part and impose a class period end date of October 8, 2014, this would have shortened the proposed class period by more than a year and substantially curtailed the Settlement Class's possible damages recovery.  Despite these risks, Lead Counsel collectively worked 4,564.35 hours over the course of nearly three years, all on a contingency basis with no guarantee of ever being paid.

1    Lead Counsel believe that an attorney fee award of 33% properly reflects the many

2    significant risks taken by Lead Counsel, as well as the excellent result achieved in a hard fought

3    and difficult litigation.  When examined under either the percentage-of-the-fund or lodestar

4    methods for calculating attorneys' fees, the requested fee is reasonable, and well within the range

5    of attorneys' fees awarded in similar complex, contingency cases.  In addition, the costs and

6    expenses requested by Lead Plaintiff and his counsel are likewise reasonable in amount, and they

7    were necessarily incurred in the successful prosecution of the Action.  Accordingly, they too

8    should be approved.

9    **II.      FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION**

10   The Solish Declaration is an integral part of this submission.  For the sake of brevity in this

11   memorandum, the Court is referred to it for a detailed description of, *inter alia*, the factual and

12   procedural history of the Action (¶¶ 11-46); the nature of the claims asserted (¶¶ 12, 18, 29); the

13   negotiations leading to the Settlement (¶¶ 39-44); the risks and uncertainties of continued litigation

14   (¶¶ 47-65); and the services Lead Counsel provided for the benefit of the Settlement Class (¶¶ 83-

15   91).  Additionally, in accordance with this District's Procedural Guidance for Class Action

16   Settlements, the Court is referred to the concurrently filed final approval motion for the history

17   and facts set out in that memorandum.

18   **III.     THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST**

19         **A.      Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The
20                   Common Fund**

21   It is well settled that attorneys who represent a class and are successful in recovering a

22   common fund for the benefit of class members are entitled to a reasonable fee from the common

23   fund as compensation for their services.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a

24   litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or

25   his client is entitled to a reasonable attorney's fee from the fund as a whole.").  Similarly, the

26   Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover,

27   increase or preserve a fund to which others also have  a claim is entitled to recover from the fund

28   the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d

759, 769 (9th Cir. 1977); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.") ("*WPPSS*"); *accord Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).  This rule, known as the "common fund" doctrine, is "designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal 2008) (citation omitted).

      **B.**      **The Court Should Calculate The Requested Fee As A Percentage Of The Common Fund**

District courts in the Ninth Circuit retain discretion to award attorneys' fees in common fund cases based upon either the percentage-of-the-fund method or the lodestar method.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method).  Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method used.  *See, e.g.*, *Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"); *Omnivision*, 559 F. Supp. 2d at 1046 (same).

Most courts have found the percentage approach superior in cases with a common fund recovery because it parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; aligns the lawyers' interests with that of the class in achieving the maximum possible recovery; and reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis.  *See Omnivision*, 559 F. Supp. 2d at 1046; *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires.");

*see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (lodestar/multiplier method "adds to the work load of already overworked district courts").

For these reasons, among others, Lead Counsel respectfully request that the Court award attorneys' fees in this case on a percentage-of-the-fund basis.

### C.   The Requested Fee's Approval Is Supported By The Factors Considered By Courts In The Ninth Circuit

Courts in the Ninth Circuit consider certain factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Those factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases. *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-51 (9th Cir. 2012)); *see also In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011). The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Vizcaino*, 290 F.3d at 1048-50. As demonstrated below, each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee.

### 1.   The Quality Of The Results Achieved Supports The Fee Request

Courts have consistently acknowledged that the quality of the result achieved is the most important factor in determining an appropriate fee award. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Rodman v. Safeway*, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 22, 2018); *Omnivision*, 559 F. Supp. 2d at 1046.

Lead Counsel submits that the $3.5 million proposed Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through a decision on class certification, summary judgment and trial. Lead Plaintiff's damages expert estimates that if Lead Plaintiff had fully prevailed in each of his claims

at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Lead Plaintiff's damages theory, including proof of loss causation as to each of the four stock price drop dates alleged in this case— *i.e.*, Lead Plaintiff's **best case scenario**, the total **maximum** damages would be $65.926 million. Thus, the $3.5 million Settlement Amount represents approximately 5.3% of the total **maximum** damages potentially available in this Action.  ¶¶ 5, 62.

This case was not, however, risk free and there were meaningful potential barriers to recovery.  Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case.  ¶¶ 47-60; *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J. (Ret.)) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").  For example, Defendants vehemently opposed class certification, claiming that the proposed class period—October 10, 2013 through October 27, 2015, inclusive—begins too early and ends too late.  Specifically, Defendants argued that the proposed class period should begin no earlier than November 7, 2013, when Lead Plaintiff alleged that Defendants failed to inform investors of the risk that K12's contract with Agora would either not be renewed, or that the nature of the contract would materially change, and that the end of the alleged class period should be no later than June 26, 2014, when K12 issued a press release confirming that the Agora Board was soliciting vendor bids for the 2015-2016 school year. ¶¶ 47, 54-55.  If Defendants successfully convinced the Court that the appropriate class period was in fact November 7, 2013 through June 26, 2014, inclusive, maximum estimated recoverable damages would have been reduced to $6.56 million.  Under this scenario, the $3.5 million recovery equates to a 53.4% of damages.[2]  Accordingly, Lead Counsel's efforts have resulted in a recovery of between 5.3% and 53.4% of the Settlement Class' damages.

---

[2] Furthermore, had Defendants' proposed class period prevailed, Lead Plaintiff's claims may have been time-barred under the two-year statute of limitations governing federal securities fraud claims.  *See In re Affymetrix Derivative Litigation*, 2008 WL 5050147, at *4 (N.D. Cal. 2008) ("Under the Sarbanes–Oxley Act of 2002, the statute of limitations for a claim brought under §

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Master File No. 4:16-cv-04069-PJH
AND REIMBURSEMENT OF LITIGATION EXPENSES

1    In comparison, from 1996 through 2018, the median recovery in securities class actions

2    with estimated damages ranging from $50-99 million was 4.7% (*see* Ex. 4 (Stefan Boettrich and

3    Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review

4    (NERA Jan. 29, 2019)) at p. 35, Fig. 27), and the median securities class action settlement in 2018

5    was approximately 2.6% of estimated damages.  *See Id.* at p. 36, Fig. 28.  Furthermore, the

6    percentage of damages recovered compares favorably with other securities fraud settlements

7    approved by courts in this Circuit.  *See, e.g.*, *Gudimetla v. Ambow Educ. Holding*, 2015 WL

8    12752443, at *5 (C.D. Cal. Mar. 16, 2015) (approving securities fraud class action settlement

9    where recovery of $1.5 million was 5.6% of $26.7 million in estimated damages); *In re LJ Int'l,*

10   *Inc. Sec. Litig.*, 2009 WL 10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving securities fraud

11   class action settlement where $2 million recovery was 4.5% of $44 million maximum possible

12   recovery); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL

13   5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities fraud class action settlement where

14   recovery was 3.5% of maximum damages and noting "this amount is within the median recovery

15   in securities class actions settled in the last few years").

16       Given the range of possible results in this litigation, there can be no question that the

17   recovery constitutes a considerable achievement and weighs strongly in favor of the requested fee.

18       **2.      The Substantial Risks Of The Litigation Support The Fee Request**

19       The second factor courts in this Circuit consider in awarding attorneys' fees is "[t]he risk

20   that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving

21   complicated legal issues."  *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at

22   1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *In re Pac. Enters.*

23   *Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees "justified because of the

24   complexity of the issues and the risks").  While courts have always recognized that securities class

25   actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has

26   increased significantly.  *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa.

27
28   10(b) is two years from the discovery of facts constituting the violation but no more than five
     years from the date of the violation." citing 28 U.S.C. 1658(b)(1)(2)); *see also* ¶ 59.

2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA.").[3]  This Action was no exception.

While Lead Counsel believe that the claims of Lead Plaintiff and the Settlement Class are meritorious, Lead Counsel also recognize that there were a number of substantial risks in the litigation from the outset and that Lead Plaintiff's ability to succeed at trial and obtain a substantial judgment was far from certain.  As discussed in greater detail in the Solish Declaration and in the memorandum of law in support of the Settlement, there were substantial risks here with respect to getting the alleged class period certified, and in establishing both liability and damages.  ¶¶ 48-59.  For evidence of this risk, the Court needs to look no further than its own Order dismissing large portions of the case pursuant to Defendants' motion to dismiss.  *See Tarapara v. K12 Inc.*, Case No. 16-cv-4069-PJH, 2017 WL 3727112 (N.D. Cal. Aug. 30, 2017).

The fact that Lead Plaintiff prevailed on some of his claims at the pleading stage did not, however, guarantee a recovery at trial.  Lead Counsel faced significant hurdles in ***proving*** that the statements issued by Defendants were both actionable and material.  For instance, Defendants forcefully argued in their motion to dismiss and would undoubtedly argue in a motion for summary judgment and/or at trial, that the notice of non-renewal received from Agora did not constitute material information that K12 had a duty to disclose, but in fact was merely a notification to K12 that the management contract between the two parties would not ***automatically*** renew, thereby allowing for a re-negotiation of certain terms as reflected in the new curriculum contract that K12 and Agora ultimately announced in October 2014.  Defendants would have also continued to argue that certain statements regarding the Agora management contract were factually true at the time made, and that Lead Plaintiff's allegations that Defendants misled investors by downplaying Agora's RFP process or announcing K12's new contract with Agora in October 2014 were not actionable under the federal securities laws.  ¶¶ 49-50.

---

[3] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (Pollack, J.) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

1    Lead Plaintiff also faced challenges in proving that Defendants' alleged misstatements

2    were made with scienter.  *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166,

3    1172 (S.D. Cal. 2007)  (recognizing "that the issues of scienter and causation are complex and

4    difficult to establish at trial").  ¶¶ 51-52.  There was no admission of wrongdoing, and Defendants

5    insisted throughout the litigation that their statements concerning K12's contract with Agora were

6    made in good faith.  Defendants would also be able to point to the fact that the Agora Board

7    expressly disclaimed any intention of inhibiting negotiations with K12 by virtue of the 2012 notice

8    of non-automatic renewal, and that the two parties actively pursued discussions throughout 2014,

9    which led to a new contract later that year.  Moreover, Defendants would be able to claim that they

10   did not have a motive to commit fraud, as evidenced by their lack of class period stock sales.  *Id.*

11   Even assuming that Lead Plaintiff overcame the above risks and successfully established

12   Defendants' liability, he would still have confronted considerable challenges in establishing loss

13   causation and damages.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs

14   bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the

15   plaintiff seeks to recover'").  First, Lead Plaintiff faced significant hurdles in establishing loss

16   causation with respect to the decline in stock price in reaction to the announcements following the

17   June 26, 2014 press release in which K12 announced that Agora was soliciting vendor bids for the

18   2015-2016 school year.  In their opposition to class certification, Defendants argued that the

19   market learned of any previously omitted material facts regarding K12's relationship with Agora

20   following the June 26, 2014 announcement, and specifically that the disclosure of Agora's RFP

21   process informed the market that the Agora Board did not intend to let the existing management

22   contract automatically renew.  Thus, according to Defendants, no investor loss flowed from any of

23   the four alleged disclosures.  ¶ 54.  If this argument were accepted by the Court or a jury, the

24   Settlement Class's recovery would have been reduced by almost 90%.  *Id.*  With respect to the

25   declines following the announcements on August 14, 2014, October 9, 2014, and October 27,

26   2015, Defendants would have asserted that a substantial portion of each decline was due to the

27   disclosure of other information unrelated to the alleged fraud.  ¶ 55. The Parties' divergent views

28   on  the  issue  of  confounding  information  would  have  been  the  subject  of  competing  expert

testimony.   Additionally, Lead Plaintiff would have had to proffer expert testimony to prove: (i) what the "true value" of K12 Securities would have been had there been no alleged material misstatements or omissions concerning Defendants' receipt of the non-automatic renewal notice from Agora; (ii) the amount by which K12 shares were inflated by the alleged material misstatement and omissions; and (iii) the amount of inflation removed by the disclosures of the alleged true facts on June 26, 2014, August 14, 2014, October 9, 2014, and October 27, 2015.   In turn, Defendants would have proffered their own damages expert(s) to present conflicting conclusions and theories as to the reason(s) for K12's share price decline.   The "battle of the experts" would have been decided by the jury, which is an inherently risky process.  ¶ 56.  Indeed, "[w]hen the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."  *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012); *see also In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

In sum, the risks posed by litigation were substantial, and they were present every step of the way.   Accordingly, this factor weighs heavily in favor of the requested fee award.  *See Pac. Enters.*, 47 F.3d at 379 (finding attorneys' fees of thirty-three percent "justified because of the complexity of the issues and the risks"); *see also Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) (approving requested fee and noting that, "[a]s to the second factor . . ., the risks associated with this case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation"); *Omnivision*, 559 F. Supp. 2d at 1047 (noting risk of litigation, including plaintiffs' ability to prove loss causation and risk defendants would prevail on damages, supported requested fee).

### 3.    The Skill Required And The Quality Of The Work

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed.   To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047 (internal quotation marks and citation omitted), and that

"[t]he experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) (citation omitted). "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

Here, the attorneys at GPM are among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long record of successfully prosecuting securities cases throughout the country, including within this Circuit.  *See* ¶ 91, and Ex. 5 (GPM Firm Resume).  Lead Counsel respectfully submits that the quality of its efforts in the litigation, together with its substantial experience in securities class actions and commitment to this litigation, provided Lead Counsel with the leverage necessary to negotiate a favorable settlement.

From the outset, Lead Counsel aggressively sought to obtain the maximum recovery for the Settlement Class.  Through Lead Counsel's persistent work, the Lead Plaintiff was able to plead detailed allegations based on counsel's extensive investigation; defeat portions of Defendants' motion to dismiss despite the heightened pleading standard of the PSLRA; fully brief class certification; conduct significant fact discovery; and work with experts and consultants to present strong counterarguments to Defendants' positions (particularly on loss causation and damages).  ¶¶ 6, 16-44.  Lead Counsel's extensive efforts and skill led to the Settlement and strongly support the requested percentage fee.

In evaluating the quality of Lead Counsel's work, it is also important to consider the quality and vigor of opposing counsel.  *See, e.g.*, *Heritage Bond*, 2005 WL 1594403, at *20; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work.") (citation omitted), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).  Defendants in this Action were represented by Latham & Watkins LLP, a highly respected national law firm, whose briefs filed in support of Defendants' motion to dismiss and in opposition to Lead Plaintiff's motion for class certification reflected a vigorous defense.  ¶ 92.  Lead Counsel's ability to obtain

a favorable Settlement in the face of this formidable legal opposition confirms the superior quality of Lead Counsel's work and supports the award of the requested fee.

> **4.       The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request**

The fourth factor in determining a fair and reasonable fee requires courts in the Ninth Circuit to consider the contingent nature of the fee and the obstacles surmounted:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent fee basis a larger fee than if they were billing by the hour or on a flat fee."); *see also Zynga*, 2016 WL 537946, at *18 ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award.").  Moreover, the Supreme Court has emphasized that private securities actions such as this "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 319 (2007) (same).

Here, Lead Counsel has received no compensation to date, invested 4,564.35 hours of work equating to a total lodestar of $2,313,474.50, and incurred expenses of $166,978.92 in prosecuting and resolving this Action.  Additional work in implementing the Settlement and claims administration will also be required.  Since the inception of this case, Lead Counsel has borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is very real.  Lead Counsel knows from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed.  *See, e.g.*, *In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) (GPM served as Co-Lead Counsel in case where, after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, as well as a multi-week trial, the jury returned a verdict in favor of defendants alleged to have conspired to fix the prices of Korean ramen noodles).

And Lead Counsel is not alone.  There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiff's bar produced no attorneys' fees for counsel. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant and expensive foreign discovery, 95% of plaintiffs' damages were eliminated by Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years).  "Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."  *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[4]  Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on

---

[4] *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd* 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing lodestar of approximately $48 million).

loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011)).[5]

Here, because Lead Counsel's fee was entirely contingent, the only certainties were that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended. Nevertheless, Lead Counsel committed significant resources of both time and money to vigorously and successfully prosecute this Action for the benefit of the Settlement Class. ¶¶ 93-98. The contingent nature of counsel's representation strongly favors approval of the requested fee.

### 5.    A 33% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation

In *Paul, Johnson, Alston & Hunt v. Graulty*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees. 886 F.2d 268, 272 (9th Cir. 1989); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25% benchmark). However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "'reasonable under the circumstances.'" *WPPSS*, 19 F.3d at 1295 n.2.[6] As applied, this means that "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Activision*, 723 F. Supp. at 1373 (surveying securities cases nationwide, awarding 32.8% fee from $3.5 million fund, and noting, "This court's review of recent reported cases discloses that nearly all common fund awards range around 30%[.]")). This is especially true in cases with "relatively small" common fund settlements. *See Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008)

---

[5] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

[6] *See also Paul, Johnson*, 886 F.2d at 271 ("[I]t is well settled that the lawyer who creates a common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. The amount of such a reward is that which is deemed 'reasonable' under the circumstances." (Citations omitted, bold emphasis added)).

("Cases of under $10 million will often result in result in fees above 25%.").  Indeed, empirical research by NERA, an economics consulting firm, found that the median award of attorneys' fees in class action securities cases with a settlement value below five million dollars was 33.3% between 1996 and 2013, and 33% between 2014 and 2018.  *See* Ex. 4 at p. 41, Fig. 32 (NERA Report).[7]

In view of the result obtained, the contingent fee risk, the number of hours dedicated to this case, and the financial commitment of Lead Counsel, it respectfully submitted that an award of 33% of the recovery obtained for the Class is appropriate.  Such an award would be consistent with attorneys' fee awards in similar, complex, contingent litigation.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million settlement); *Hodges v. Akeena Solar, Inc.*, No. 5:09-cv-02147-JW, Amended Order Awarding Lead Counsel Attorneys' Fees and Expenses, at 1 (N.D. Cal. Dec. 15, 2011) (awarding one-third of $4,770,000 settlement fund), ECF No. 167 (Ex. 9); *In re Resonant Inc. Sec. Litig.*, No. 2:15-cv-01970 SJO (MRW) slip op. at ¶ 17 (C.D. Cal. Nov. 22, 2017), ECF No. 154 (Ex. 10) (finding an award of 33% of the $2.75 million settlement is "fair and reasonable"); *In re Interlink Elec., Inc. Sec. Litig.*, No. 05-cv-08133 AG (SH), slip op. at 4 (C.D. Cal. June 1, 2009), ECF No. 165 (Ex. 11) (awarding 33-1/3% of $5 million settlement fund); *In re 2TheMart.com, Inc. Sec. Litig.*, No. 99-cv-1127-DOC (ANx), slip op. at 2 (C.D. Cal. July 8, 2002), ECF No. 161 (Ex. 12) (awarding 33-1/3% of $2.7 million settlement fund); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar

---

[7] A strong argument can be made that as the size of the common fund grows, attorneys' "fees should not diminish on a percentage basis, as some courts have done, because that undermines the full alignment between class counsel and the class.  This is because, if the percentage of fees go down as the size of the fund goes up, a substantial increase in the size of the fund may be only marginally beneficial to the class counsel while it may be extremely beneficial to the class, with the result being that the economic interests of the class and counsel become mis-aligned." *Cty. of San Bernardino*, 624 F. Supp. 2d at 1113 (citing Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response,* 17 Rev. Litig. 525, 534 (1998)).

method is used, fee awards in class actions average around one-third of the recovery,'" *citing* 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)).[8]   Accordingly, Lead Counsel's fee request is in line with other comparable cases and should be approved.

**6.      The Reaction Of The Settlement Class Supports The Requested Fee**

The class's reaction to a proposed settlement and fee request is a relevant factor in approving fees.  *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *Omnivision*, 559 F. Supp. 2d at 1048.   Here, the Settlement Class was notified of the Settlement and the request for attorney's fees and reimbursement of Litigation Expenses by a combination of first-class mail, publication, and the settlement website.  Villanova Decl. ¶¶ 8-9, 14.  The Court-approved Postcard Notice was sent to 12,492 potential Settlement Class members and the Court-approved Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*.  A dedicated website, www.K12securitieslitigation.com, was also created, and all relevant dates and documents—including the Postcard Notice, Notice, Stipulation, Claim Form and SAC—were posted thereon.[9]  ¶ 72; Villanova Decl. Exs. A & B.

---

[8] *See also Pac. Enters.*, 47 F.3d at 373 (33% award from $12 million common fund "for attorneys' fees is justified because of the complexity of the issues and the risks"); *Heritage Bond*, 2005 WL 1594403, at *23 (awarding fee of 33.33% of $27,783,000 settlement fund because "courts in this circuit, as well as other circuits have awarded attorneys' fees of  30% or more in complex class actions"); *Elliot v. China Green Agriculture Inc.*, No. 3:10-cv-00648-LRH-WGC, slip op. at ¶ 16 (D. Nev. Aug. 12, 2014), ECF No. 166 (Ex. 13) (awarding 33-1/3% of $2.5 million settlement fund); *Singer v. Becton Dickinson & Co.*, No. CV 08-0821 IEG (BLMx), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding of 33.3% of $1 million common fund); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 (MMM) (SHx), 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (34% of $8.5 million common fund); *Antonopulos v. N. Am. Thoroughbreds. Inc.*, No. 87-0979 G (CM), 1991 WL 427893, at *4, (S.D. Cal. May 6, 1991) (awarding one-third of $3,098,000 settlement fund); *Jenson v. First Trust Corp.*, No. CV 05-3124 ABC (CTx), Final Order and Judgment, at 6 (C.D. Cal. June 9, 2008) (awarding 1/3 of an $8.5 million fund), ECF No. 134 (Ex. 14).

[9] Both the Postcard Notice and the Notice informed the Settlement Class that Lead Counsel would apply to the Court for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Fund.  ¶ 67; Villanova Decl. Exs. A & B.

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Master File No. 4:16-cv-04069-PJH
AND REIMBURSEMENT OF LITIGATION EXPENSES

1      To date, **no** objections to the requested amounts of attorneys' fees and expenses have been

2  received.[10]   The lack of objections is compelling evidence that the requested fees and expenses are

3  reasonable.  *See, e.g.*, *Zynga*, 2016 WL 537946, at *13 ("By any standard, the lack of objection of

4  the Settlement Class Members favors approval of the Settlement."); *see also Fernandez*, 2008 WL

5  8150856, at *13 (3 members objected and 29 opted out, indicating favorable result and award of

6  "generous fee").  The reaction of the Class, therefore, weighs heavily in favor of approving the fee

7  request.

8        **D.**      **A Lodestar Cross-Check Supports The Requested Fee**

9      Although Lead Counsel seeks approval of a fee based on a percentage of the fund, as "[a]

10  final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks

11  as a percentage with what their hourly bills would amount to under the lodestar analysis."

12  *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at

13  *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of

14  attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can

15  demonstrate the fee request's reasonableness").

16      The lodestar method "calculates the fee award by multiplying the number of hours

17  reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to

18  account for the risks associated with the representation."  *Graulty*, 886 F.2d at 272.  "Calculation

19  of the lodestar, however, is simply the beginning of the analysis."  *In re Warner Commc'ns Sec.

20  Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In the second

21  step of the analysis, a court adjusts the lodestar to take into account, among other things, the time

22  and labor required, the result achieved, the quality of representation, whether the fee is fixed or

23  contingent, the novelty and difficulty of the questions involved, and awards in similar cases.  *See,

24  e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013).  In so doing, "courts have

25  routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."

26  *Vizcaino*, 290 F.3d at 1051-52 (approving a 3.65 multiplier and finding that when the lodestar is

27

28

---

[10] The last day to file an objection is June 26, 2019.  If any objections are filed, Lead Counsel will address them in a reply brief.

used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT & T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (finding "multiplier of 4.3 is reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent and quick results obtained for the Class, the contingent nature of the fee and risk of no payment, and the range of fees that are customary.").

Here, Lead Counsel's lodestar is $2,313,474.50.  ¶ 85.  Therefore, the requested fee of $1,155,000 yield a fractional multiplier of 0.499.  ¶ 89.  A "multiplier of less than one … suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class."  *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (finding requested fee award was not unreasonable when lodestar cross-check revealed a multiplier of 0.59); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").  Indeed, "an award exceeding 25 percent is reasonable where the total fee award is lower than the lodestar calculation."  *Cabiness v. Educ. Fin. Sols., LLC*, 2019 WL 1369929, at *7 (N.D. Cal. Mar. 26, 2019).  This is because, as is true here, "the requested award would not 'yield windfall profits for class counsel in light of the hours spent on the case.'"  *Id.* (quoting *Bluetooth*, 654 F.3d at 942).[11]

Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, Lead Counsel's lodestar is supported by the Solish Declaration, which includes a detailed exhibit showing the hours incurred by each GPM professional that worked on this litigation, broken down by six substantive categories of work.  ¶¶ 85-86; Ex. 6.  In addition, for

---

[11] *See also In re Initial Pub. Offering Sec. Litig.*, 2011 WL 2732563, at *9 (S.D.N.Y. July 8, 2011) (noting fractional multiplier meant "every firm was . . . compensated for a small fraction of the time spent on the case").

each attorney or other professional whose time is included in Lead Counsel's lodestar, a summary of the principal tasks that he or she worked on in the litigation has been provided.  ¶ 86; Ex. 7.

The current hourly rates for Lead Counsel range from $650 to $935 for partners and of counsel attorneys, $375 to $525 for associates, and $395 per hour for contract attorneys.  Ex. 5. The blended hourly rate for all timekeepers in the application is $529.45.  Lead Counsel believes that these rates are within the range of reasonable fees for attorneys working on complex class-action litigation in this District.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check and finding that "[t]he blended average hourly billing rate is $529 per hour for all work performed and projected, with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"); *Hefler v. Wells Fargo & Co.,* No. 16-cv-05479, slip op. at 21-22 (N.D. Cal. Dec. 18, 2018), ECF No. 252 (Ex. 15) (finding reasonable counsel's rates that ranged from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals, and a blended hourly rate for all timekeepers of $406).  Lead Counsel's rates for its partners, of counsel attorneys, and associates are also comparable to peer plaintiff and defense firms litigating matters of similar magnitude.  *See* Ex. 8 (rates charged by defense counsel in complex litigation matters routinely reach as high as $1,500 per hour or higher).

In sum, Lead Counsel's requested fee award is reasonable, justified, and in line with what courts in this Circuit award in class actions such as this one, whether calculated as a percentage of the fund or as a multiple of counsel's lodestar.  As discussed above, each of the factors considered by courts in the Ninth Circuit also strongly supports the reasonableness of the requested fee.

## IV.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund.  *Omnivision*, 559 F. Supp. 2d at 1048; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).  The appropriate analysis to apply in deciding which expenses are

compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the beginning of the case, Lead Counsel was aware that it might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action.  Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.  ¶ 106.

In the aggregate, Lead Counsel have incurred expenses in the amount of $166,978.92 while prosecuting the Action, and these expenses are set forth in the Solish Declaration, ¶¶ 102-103, 107-111.  The largest expense was for the retention of experts in the fields of market efficiency, loss causation, damages, and accounting, in the amount of $93,839, or approximately 54.4% of the total litigation expenses.  ¶ 107.  Another substantial cost related to Lead Counsel's share of the mediation fees charged by Judge Daniel Weinstein (Ret.) of JAMS, which was $31,360 and equates to 18.2% of Lead Counsel's total litigation expenses.  ¶ 108.  Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.  They should, therefore, be reimbursed out of the common fund.  *See Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees."); *see also Harris*, 24 F.3d at 19 (approving reimbursement of "service of summons and complaint, . . . postage,

investigator, copying costs, hotel bills, meals, messenger service"); *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, at \*22 (E.D. Cal. Nov. 27, 2012) (noting mediation fees are among the "types of fees . . . routinely reimbursed").[12]

## V.   LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)

In connection with Lead Counsel's requests for reimbursement of Litigation Expenses, Lead Plaintiff seeks reimbursement of a total of $5,500 in costs (including lost wages). ¶104. The PSLRA permits the Lead Plaintiff in this case to recoup litigation costs (including lost wages) incurred as a result of serving as Plaintiff in the litigation and ensuring that the Class was adequately represented. 15 U.S.C. § 78u-4(a)(4). Indeed, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at \*10 (S.D.N.Y. Oct. 24, 2005); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2012 WL 345509, at \*6 (S.D.N.Y. Feb. 2, 2012).

Here, Lead Plaintiff respectfully requests reimbursement in the amount of $5,500. *See* Declaration of Babulal Tarapara (attached as Ex. 2 to the Solish Declaration) ("Tarapara Decl."), ¶ 12. As set forth in his declaration, Mr. Tarapara stepped forward to represent the Class and spent approximately 55 hours participating in this litigation. *Id.* Among other things, Mr. Tarapara: (i) reviewed significant pleadings, briefs, and Court orders; (ii) communicated with Lead Counsel via email and telephone about case developments and litigation strategy; (iii) assisted Lead Counsel in responding to discovery, which included searching his emails and files, producing documents, and responding to interrogatories; (iv) prepared for and sat for a

---

[12] The Notice informed Settlement Class Members that Lead Counsel intends to apply for the reimbursement for Litigation Expenses incurred by Lead Counsel "in an amount not to exceed $225,000, which may include an application for reimbursement of the reasonable costs (including lost wages) incurred by Lead Plaintiff directly related to his representation of the Settlement Class." Villanova Decl. Ex. B, ¶ 5. Lead Counsel's requested reimbursement of $166,978.92 (plus $5,500 for Lead Plaintiff) is substantially less than the maximum amount of potential expenses disclosed in the Notice and, to date, there have been no objections to the request for reimbursement of Litigation Expenses. ¶ 105.

deposition; (v) prepared for the mediation session, including discussing with Lead Counsel the Parties' mediation statements and Lead Counsel's mediation strategy; (vi) consulted with counsel regarding the Settlement Amount and ultimately approved the Settlement; and (vii) communicated with Lead Counsel regarding the process for finalizing the Settlement. *See Id.* at ¶¶ 5-7.

Lead Plaintiff and his counsel respectfully submit that reimbursement of $5,500 for the considerable time and effort Mr. Tarapara expended for the benefit of the Settlement Class is both reasonable and appropriate. It is also well below reimbursement awards in similar complex cases. *See, e.g.*, *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award for the "significant time and effort Lead Plaintiff expended to support this litigation (including reviewing and commenting on the complaints and significant briefs, traveling to Los Angeles to prepare and sit for deposition, and communicating with counsel to oversee the litigation.")); *In re HP Sec. Litig.*, No. 3:12-cv-05980-CRB, slip op. at 2 (N.D. Cal. Nov. 16, 2015), ECF No. 279 (Ex. 16) (awarding $162,900 to lead plaintiff from settlement fund as "reimbursement for its costs and expenses directly related to its representation of the Settlement Class"); *Immune Response*, 497 F. Supp. 2d at 1173-74 ($40,000 reimbursement to lead plaintiff); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, at *1 (D. Or. Nov. 13, 2006) ($10,000 incentive awards to class representatives).

## VI. CONCLUSION

From the outset of this litigation, Lead Plaintiff and Lead Counsel faced determined adversaries represented by experienced counsel. With no assurance of success in a case presenting substantial risks, Lead Counsel pursued the Action and successfully obtained the $3.5 million Settlement for the benefit of the Settlement Class. The Settlement reflects Lead Counsel's determination and efforts in the face of significant risk. Accordingly, Lead Counsel respectfully submits that the Court should approve the fee and expense application (i) awarding Lead Counsel 33% of the Settlement Fund, plus interest at the same rate as has been earned on the Settlement Fund since it was deposited, (ii) awarding $166,978.92 for Lead Counsel's litigation expenses, and (iii) awarding $5,500 to Lead Plaintiff for his costs and expenses directly related to his representation of the Settlement Class.

1    Dated:  May 10, 2019                    Respectfully submitted,

2                                            **GLANCY PRONGAY & MURRAY LLP**

3

4                                            By:  */s/ Leanne H. Solish*
                                             Joseph D. Cohen
5                                            Kara M. Wolke
                                             Leanne H. Solish
6                                            Melissa C. Wright
                                             1925 Century Park East, Suite 2100
7                                            Los Angeles, CA 90067
                                             Telephone: (310) 201-9150
8                                            Facsimile: (310) 201-9160
                                             Email: info@glancylaw.com
9

10                                           *Lead Counsel for Lead Plaintiff*
                                             *and the Settlement Class*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On May 10, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 10, 2019, at Los Angeles, California.

*s/ Leanne H. Solish*
Leanne H. Solish